STATE OF CONNECTICUT *v.* RAYMOND L. HAYLES
(AC 17103)

Foti, Spear and Sullivan, Js.

Argued January 11—officially released April 6, 1999

*Eugene P. Falco,* for the appellant (defendant).

*Ellen A. Jawitz,* deputy assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, and *Devin Stilson,* assistant state's attorney.

### Opinion

SULLIVAN, J. The defendant, Raymond L. Hayles, appeals from a judgment of conviction, rendered after a jury trial, of two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (5) and of carrying a pistol without a permit in violation of General Statutes § 29-35. The defendant claims that the trial court improperly (1) denied his motion to dismiss because of the state's *Brady*[1] violations and (2)

---

[1] *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

excluded the testimony of an expert witness on gangs. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On October 2, 1994, Duwayne Brown, a friend of the defendant, was sitting in a chair in front of a building in Danbury when Timothy Locke, Kailash Thakordeen, Larry Hill and Thomas West approached him. The defendant, who was in or near the building, stated that he believed these individuals were members of a gang and planned to attack Brown. Hill and West remained in the street while Locke and Thakordeen went up to Brown. Locke first hit Brown in the face and then hit him several more times as he lay on the ground. Two or three people came over and stood near Locke and Thakordeen, and five or six onlookers gathered in the street near Hill and West. The defendant came around a corner and opened fire with a nine millimeter pistol, wounding Thakordeen in the abdomen and Hill in the arm and shoulder. The defendant later claimed that he attempted to intercede verbally to assist Brown and that he fired his pistol only out of fear for his and Brown's safety when the gang members directed their attention to him.

Almost one year later, the defendant was arrested in Camden, New Jersey, and returned to Connecticut for trial.

I

The defendant claims that the trial court improperly denied his motion to dismiss on the basis of the state's *Brady* violations. We disagree.

The following additional facts are necessary to our resolution of this claim. On February 28, 1996, the defendant filed requests for disclosure of exculpatory material and information relating to any witness' affiliation with gangs and information on those gangs. It was not

until December 6, 1996, after jury selection was complete and just prior to the commencement of the trial, that the prosecutor transmitted to the defendant statements given to police by Brown on October 12, 1994, and by Curtis McCormack, a witness, on October 3, 1994. The defendant moved to dismiss on December 10, 1996, on the ground of the state's failure to disclose exculpatory material. The trial court denied the motion to dismiss but offered defense counsel "a continuance as long as you'd like within reason to investigate and prepare your defense. Now, if you'd like to tell me how much you're going to need, again, within reason, I'll consider it. If you'd like to wait until after you've had lunch or slept on it or talked to your client about it, we'll do that too. The motion to dismiss, however, is denied." The defendant declined the court's offer and proceeded to trial, where both Brown and McCormack were called as witnesses.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). However, *Brady* does not mandate pretrial disclosure in all cases. W. LaFave & J. Israel, Criminal Procedure (2d Ed. 1992) § 20.7, p. 894. Evidence "that is disclosed, even if during trial, is not considered suppressed as that term is used in *Brady*." *State* v. *Dolphin*, 195 Conn. 444, 455–56, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985). "Where there has been an initial disclosure of exculpatory evidence at trial, the appropriate standard to be applied 'is whether the disclosure came so late as to prevent the defendant from receiving a fair trial.' *United States* v. *McPartlin*, 595 F.2d 1321, 1346 (7th Cir.), cert. denied, 444 U.S. 833, 100 S. Ct. 65, 62 L. Ed. 2d 43 (1979) . . . ." (Citations omitted.) *State*

v. *Walker*, 214 Conn. 122, 127–28, 571 A.2d 686 (1990).[2] The defendant bears the burden of proving that he was prejudiced by the failure of the state to make the disclosure earlier. Id.

The defendant received the two statements, albeit after jury selection. The trial court offered the defendant any reasonable continuance that he wanted. The defendant declined the court's offer and instead opted to proceed with the trial. At trial, both Brown and McCormack testified for the defense. Although we agree with the trial court in its disapproval of the "incredible negligence and incredible lack of supervision" that resulted in the delay of the disclosure of the statements, we cannot conclude that the defendant in this case was prejudiced by the delay.

## II

The defendant also claims that the trial court improperly excluded expert testimony concerning gangs. The defendant maintains that such testimony was essential to his claim of self-defense.

A few additional facts are necessary. At trial, the defendant argued that the attack on Brown was a gang "beat down," which he attempted to stop verbally, but that ultimately he could protect himself and Brown from serious harm only by using force. Pueblo Otero, an acting Bridgeport police lieutenant, was qualified as an expert on gangs by the defendant. The state objected on the ground of relevance. During the defendant's proffer, Otero testified as to the origins and hierarchy of

---

[2] The defendant's reliance on *State* v. *Asherman*, 193 Conn. 695, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985), and *State* v. *Morales*, 232 Conn. 707, 657 A.2d 585 (1995), is misplaced. Both of those cases involve circumstances in which evidence was never made available to the defendant. The trial court used *Asherman* merely as an a fortiori argument rather than suggesting that it was the proper standard. Our Supreme Court has made clear that *Walker* controls late disclosures.

the gang, the gang's identification signs and symbols, and the nature of a beat down. Otero stated that a beat down was a brief, minor physical assault, which gangs use for discipline and which resulted in only slight injuries. The trial court excluded Otero's testimony as irrelevant.

"The trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions. . . . The court's decision is not to be disturbed unless [its] discretion has been abused, or the error is clear and involves a misconception of the law. . . . Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues. . . . *State* v. *Kemp*, 199 Conn. 473, 476, 507 A.2d 1387 (1986)." (Internal quotation marks omitted.) *Hutchinson* v. *Andover*, 49 Conn. App. 781, 788, 715 A.2d 831 (1998).

We cannot say that the trial court abused its discretion in excluding Otero's testimony. The relevant issue was whether the defendant was justified in using the force that he used. The organization and symbols of the gang are not helpful in the determination of that issue. The testimony on the nature of a beat down may speak to the issue but does not do so clearly enough that we can find an abuse of discretion.

Moreover, even if the trial court did abuse its discretion, the defendant points to no identifiable harm. The state convincingly argues that the exclusion of the testimony helped the defendant because Otero stated that a beat down usually lasts no more than one minute and results in very minor bruises. That statement actually undercuts the defendant's claim that he needed to use

force. Under those circumstances, the defendant suffered no harm by the exclusion of the testimony.

The judgment is affirmed.

In this opinion the other judges concurred.